**Frank A. BARTH, Jr., et al.**

v.

**ATLANTIC CONTAINER LINE, et al.**

**Civ. No. Y-83-3805.**

United States District Court,
D. Maryland.

Nov. 26, 1984.

James W. Bartlett, III, Baltimore, Md., and J. Marks Moore, III, Baltimore, Md., for plaintiffs.

Richard R. Jackson, Jr., and Peter J. McNamara, Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiffs in this action are eight individuals who each, at different times, arranged to ship their privately-owned vehicles to the United States. Each plaintiff has alleged sustaining damage and loss to his vehicle as a result of the negligence of the defendant, the unseaworthiness of the defendant's vessels, and/or a breach of the contracts of carriage as set forth in the bills of lading. Defendants, Atlantic Container Line, et al., have moved for partial summary judgment with respect to five of the plaintiffs, claiming that any potential recovery should be limited to $500 per vehicle.

The basis for this claim is Section 4(5) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(5), and the provisions of the applicable bill of lading. Those sections limit the liability of the carrier and/or its agent to $500 per package or per customary freight unit, unless a higher value was declared by the shipper and inserted onto the bill of lading, or unless the shipper was not given a fair opportunity to declare the higher value.

The questions to be determined on this motion for summary judgment involve whether a car is a "customary freight unit," and whether plaintiffs were given a fair opportunity to declare a higher value for their vehicles and pay an accompanying higher charge to ship the vehicles.

It is clear that a car is a "customary freight unit" for the purpose of determining whether the $500 limitation applies. Individual shipping units, such as the vehicles involved in this case, each may constitute a customary freight unit when a flat amount is charged per shipping unit. *General Motors Corporation v. Moore-McCormack Lines, Inc.*, 451 F.2d 24 (2d Cir.1971).

The applicable tariff on file with the Federal Maritime Commission for Wallenius Lines covering the shipments of the five plaintiffs demonstrate that the charge per shipment is calculated on a per vehicle rate. Exhibit G to Affidavit of William J. Leonard. The tariff indicates that vehicles are classified according to length; each class of vehicles is then assigned a flat rate charge. When vehicles are shipped, the length of each vehicle is used to determine which of the previously established flat rates will be assigned as the freight charge.

Plaintiffs have argued that because the length of the vehicles is used to calculate the freight charge, the unit of length measurement constitutes the customary freight unit, not the vehicle itself. While the length of each vehicle does permit assigning that vehicle to a certain category, length does not appear to be the only basis for computing the freight charge. A particular unit of length has no value assigned to it. This fact is demonstrated by the fact while increments in freight charge vary widely, increments in length remain constant.*

In a case strikingly on point, the District Court for the Southern District of New York found that individual automobiles each constituted a customary freight unit for limitation of liability purposes. *Freedman & Slater, Inc. v. M/V TOFEVO*, 222 F.Supp. 964 (S.D.N.Y.1963). In that case, the vehicles had been classified according to type, each type of vehicle a different size. The applicable tariff set forth a lump sum freight charge per vehicle. Despite allegations that the freight charge was actually calculated based upon a per cubic meter rate, the court found that the vehicle itself was the customary freight unit.

In a similar case not involving automobiles, *General Motors Corporation v. Moore-McCormack Lines, Inc.*, 451 F.2d 24 (2d Cir.1971), the Second Circuit determined that a carrier was only responsible for $500 in damages to a power plant shipped to Brazil. The carrier's tariff quoted a rate for power plants at a flat $24,750 apiece, excluding surcharges. There was evidence, however, that a 40 foot cubic ton weight unit was used in computing the charge and that a surcharge was added for power plants above a certain weight. Nevertheless, the court found that the power plant itself was the customary freight unit. The court observed that "[a]lthough, as GM claims, the 40 foot cubic ton is one factor utilized in computing the charge, it does not therefore become the freight unit for the transaction." 451 F.2d at 25–26. Because the pre-calculated freight was assigned based upon a description of the power plants per unit, the limitation was properly applied per power plant.

In this case, a pre-calculated freight rate is assigned based upon a description of the vehicle. Although length may be one factor used in computing a freight charge per vehicle, the charge is applied on a per vehicle basis. The cars themselves are the customary freight unit, and the limitation therefore applies per car unless a higher value was declared or a fair opportunity was not given to declare a higher value.

█ It is undisputed that none of the plaintiffs declared a higher value for their vehicles at the time of shipment. Plaintiffs did, however, have a fair opportunity to declare a higher value. The applicable bill of lading clearly outlined the limitation of liability and explained the shipper's opportunity to avoid the limitation and declare a higher value. Plaintiff Hudson, who shipped his car pursuant to this long form bill of lading, was clearly afforded an opportunity to avoid the $500 limitation. Although four of the plaintiffs used a short form bill of lading, that short form expressly incorporated the terms, conditions and limitations set out in the long form bill of lading. The long form was available upon

---

* For example, automobiles up to 3.50 meters in length are charged a flat rate of 259.50. Automobiles from 3.50 meters to 3.75 meters, an increment of .25 meters, are charged 281.50, an increase of 26. The next length increment, again .25 meters, increased the charge by 45. Although the increments in length remain uniform, the increments in cost vary from 26 to 64, demonstrating that a unit of length has no particular value assigned to it.

request to all plaintiffs. "Where the bill of lading incorporates COGSA, and also contains language providing for limitation of liability, this is prima facie evidence of an opportunity to avoid the limitation. The burden is then shifted to the shipper to prove that an opportunity to declare a higher rate did not exist." *Bumble Bee Sea Foods v. SS KIKU MARU*, 1978 AMC 1586, 1589 (D.Md.1978) (Young, J.).

This result is not different simply because four of the plaintiffs used a short form bill of lading. All plaintiffs were put on notice that there were terms and conditions contained in the long form which would apply to their shipments. All plaintiffs were given the opportunity to obtain the long form bill of lading and examine those conditions and limitations. The long form clearly contained space for declaring a higher value. Plaintiffs cannot complain now because they failed to take advantage of their opportunity to avoid the limitation at the time of shipment.

In a recent similar case, Judge Northrop of this District found that a carrier had made a prima facie showing of a fair opportunity to declare a higher value in a situation where a short form bill of lading had been used. The court found that a variety of factors combined to establish that *prima facie* showing, including the fact that the short form bill of lading expressly incorporated the terms of the long form, the long form was available upon request, and the form specifically explained the $500 limitation of liability unless a higher value was declared. *See Cincinnati Milacron, Ltd. v. M/V American Legend*, Civ. No. N–83–1958 (D.Md. June 11, 1984), slip op. at 4. In this case, defendants have made a prima facie showing of a fair opportunity by establishing those facts. The burden then shifts to the plaintiff to rebut that showing, or at least to allege facts in dispute which would, if true, rebut the prima facie showing.

Plaintiffs have failed to sustain their burden of proving they did not have a fair opportunity to declare a higher value. At best, they have argued that they were unaware of the applicable limitation, either because they were inexperienced, because they failed to review the long form bill of lading, or because they were not told by the shipping agent of the limitation of liability. Plaintiffs assert that "the question is not whether defendants' agent had such forms [the long form bills of lading] available but whether [plaintiff] was made aware of the provisions in the form allowing him to declare a higher value." On the contrary, the question is whether the plaintiffs had the opportunity to make themselves aware of those provisions. The fact that none of the plaintiffs took advantage of that opportunity does not change the legal conclusion that they were afforded a fair opportunity to do so. As Judge Northrop noted in *Cincinnati Milacron*, slip op. at 5, "[i]t is not required that the shipper had actual notice of the limitation of liability. Rather, the standard is that a shipper be afforded a *fair opportunity* to declare a higher value."

In *Tessler Bros. v. Italpacific Line*, 494 F.2d 438, 443 (9th Cir.1974), plaintiffs argued that summary judgment should not be granted because there was no evidence that the plaintiff shipper had actually been told of the opportunity to avoid the limitation. The court held instead that the statement in the bill of lading that such limitation existed, plus the incorporation of the provisions of COGSA, was *prima facie* evidence of a fair opportunity. Summary judgment was therefore properly granted because plaintiffs failed to rebut that showing.

Plaintiffs in this case have similarly failed to rebut the showing of a fair opportunity to declare a higher value. They have not argued or alleged any facts which would show that the opportunity established by defendants was not actually available to them. The plaintiffs have alleged various reasons why they failed to avail themselves of that opportunity, but because the statute requires only that a fair opportunity be given, those allegations are immaterial. It is clear that, as a matter of law, plaintiffs had a fair opportunity to

**1258**

declare a higher value for their vehicles and avoid the limitation of liability at the time of shipment.

Accordingly, the defendants' motion for partial summary judgment will be granted, and any potential recovery by the plaintiffs will be limited to the amount of $500.

■ Defendants have also moved for summary judgment as to plaintiff Kenyon, because Kenyon's claim was filed more than one year after his cause of action accrued. However, Kenyon has alleged that the one-year period of limitations was reopened by the defendants' offer of settlement after the one-year period had elapsed. Whether the limitations period was indeed reopened may depend on whether the offer of payment was unequivocally made and whether it expressed a definite intention to pay. *See United States v. Glens Falls Ins. Co.*, 546 F.Supp. 643 (N.D.N.Y.1982). The motion for summary judgment as to plaintiff Kenyon is therefore denied.