AETNA INSURANCE COMPANY, as subrogee to Government of the United Arab Republic of Egypt Ministry of Defense, Plaintiff–Appellant,

v.

M/V LASH ITALIA, Etc.; Prudential Lines, Inc., Defendants–Appellees.

No. 88–2504.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1988.

Decided Sept. 27, 1988.

David Warren Skeen (Wright, Constable & Skeen, Elkton, Md., on brief), for plaintiff-appellant.

Peter Joseph McNamara (Manfred W. Leckszas, Ober, Kaler, Grimes & Shriver, Baltimore, Md., on brief), for defendants-appellees.

Before CHAPMAN, WILKINSON, and WILKINS, Circuit Judges.

CHAPMAN, Circuit Judge:

Aetna Insurance Company, as subrogee to the Government of Egypt, brought this action pursuant to the Carriage of Goods By Sea Act (COGSA), 46 U.S.C.App. § 1300 *et seq.* (1982), to recover damages allegedly sustained by five military vehicles while enroute to Egypt abroad the M/V LASH ITALIA. The bases of this claim are sections 4(4) and 4(5) of COGSA, 46 U.S.C. App. §§ 1304(4) & (5) and the provisions of the bill of lading. Section 4(5) of COGSA limits liability of a carrier to $500 per package or per customary freight unit, unless the shipper declares a higher value which is inserted onto the bill of lading, or unless the shipper was not given a fair opportunity to declare the higher value.[1] Section 4(4) waives this liability limit when a carrier unreasonably deviates from the terms of the bill of lading.[2] This appeal addresses whether a "customary freight unit" for purposes of COGSA is an individual vehicle or the 40–cubic–foot ton, whether the plaintiff was given a fair opportunity to declare a higher value, and whether appellee Prudential Lines, Inc. ("Prudential") unreasonably deviated from the bill of lading by allegedly stowing the vehicles on-deck in a self-contained Lighter Aboard Ship (LASH) barge.

## I

On January 30, 1985, Prudential issued a bill of lading to the Procurement Office of Egypt for the carriage of thirty-four military vehicles, one tank retriever, and two containers of spare parts from Baltimore, Maryland to Alexandria, Egypt. Prudential agreed to transport the cargo by LASH barge aboard the M/V LASH ITALIA. LASH barges are self-contained vessels that are loaded while afloat, towed to the mother ship, and placed on board for voyage. At destination, these barges are off-loaded and towed to a pier for discharge of the cargo.

The tariff in effect for this cargo reflected a freight charge of $8379 per vehicle. Section 17 of the bill of lading contained a limitation of liability provision similar to COGSA § 4(5), providing that the owner of cargo is entitled to recover $500 for each damaged "package or ... customary freight unit." Typewritten across the front of the bill of lading was a provision for "under-deck stowage."

During the thirty-eight day period between the carrier's departure from Baltimore and its unloading in Alexandria, LASH Barge 319 took on several feet of water which allegedly caused rust damage to five of the vehicles. Aetna sued for damages in district court. Prudential moved for partial summary judgment, arguing that each vehicle constituted a "customary freight unit" and, therefore, that any potential recovery should be limited to $500 per vehicle. Aetna opposed this motion, claiming that the 40 cubic foot ton was the customary freight unit. Aetna also argued that the $500 limitation should not apply because its insured was not given

---

1. COGSA § 4(5), 46 U.S.C.App. § 1304(5) provides in pertinent part:

   Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

2. COGSA § 4(4), 46 U.S.C.App. § 1304(4) provides that:

[A]ny deviation in saving or attempting to save life or property at sea, or any reasonable deviation shall not be deemed to be an infringement or breach of this chapter or of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom....

Although this section does not refer to an "unreasonable" deviation, courts have uniformly held that section 4(4) adopts the traditional maritime rule of deviation. This rule provides that carrier "misconduct" which amounts to a material breach of the contract of carriage constitutes a "deviation" which ousts the contract of carriage and renders the carrier an insurer of the cargo. *See, e.g., DuPont de Nemours Int. S.A. v. MORMACVEGA,* 493 F.2d 97 (2d Cir. 1974); *Atlantic Mutual Ins. Co. v. Poseidon Schiffahrt,* 313 F.2d 872 (7th Cir.1963).

a fair opportunity to declare a higher value and because Prudential unreasonably deviated from the terms of the bill of lading by allegedly storing LASH Barge 319 on deck.

The district court granted Prudential's motion for partial summary judgment, concluding that each vehicle constituted a customary freight unit pursuant to COGSA § 4(5) and the bill of lading. The court found that Aetna failed to rebut Prudential's presumption that Aetna's insured had a fair opportunity to declare a higher value. Last, the court rejected Aetna's contention that on-deck stowage of the LASH barge containing the damaged vehicles was an unreasonable deviation even though the bill of lading specified "under-deck stowage." We affirm.

## II

A customary freight unit refers to the unit of cargo "customarily used as the basis for the calculation of the freight rate to be charged." *General Motors Corp. v. Moore–McCormack Lines, Inc.*, 451 F.2d 24, 25 (2d Cir.1971) (citing *Brazil Oiticica Ltd. v. The BILL*, 55 F.Supp. 780, 783 (D.Md.1944)). In computing the customary freight unit, therefore, we must look to the unit which the carrier actually used to compute the freight charge for the shipment. *Croft & Scully Co. v. M/V SKULPTOR VUCHETICH*, 664 F.2d 1277, 1282 (5th Cir. 1982).

Aetna argues that the 40–cubic–foot ton is the appropriate customary freight unit because Prudential allegedly used this measure to set its rates in order to attain a particular profit ratio. We reject this claim. While Prudential may have considered the vehicles' dimensions in setting its freight rates, the mere consideration of a particular measure does not render it a customary freight unit. *See Barth v. Atlantic Container Line*, 597 F.Supp. 1254, 1256 (D.Md.1984). It is clear in this case that the carrier calculated the freight charge on a "per vehicle" basis. Both the tariff and the bill of lading demonstrate that the three types of military vehicles in the cargo were freighted at a flat rate of $8379 per vehicle, even though each type of vehicle differed in weight and cubic measurements.[3] We therefore conclude that each vehicle is a "customary freight unit" for the purpose of assessing potential liability under COGSA § 4(5) and the bill of lading.

## III

Next, we must determine whether Aetna's insured was given a fair opportunity to declare a higher value for this cargo. Aetna does not dispute that its insured did not declare value of the damaged vehicles. Rather, Aetna argues that the limitation of liability provision in the bill of lading did not sufficiently put its insured on notice that failure to declare value would limit the carrier's liability to $500 per customary freight unit. Even if this provision gave notice, Aetna contends that the cost of declaring value was so exorbitant that it effectively denied its insured the opportunity to declare value. We find these arguments without merit.

### A.

In determining whether the bill of lading provided Aetna's insured with adequate notice of the $500 limitation, Prudential, as the carrier, bears the initial burden of proving fair opportunity. *General Elec. Co. v. M/V NEDLLOYD*, 817 F.2d 1022, 1029 (2d Cir.1987). *Prima facie* evidence of fair opportunity is established, however, if language in the bill of lading advises the shipper that it may avoid the liability limit by declaring a higher value. The burden then shifts to the shipper to demonstrate that fair opportunity did not in fact exist. *Id.* In this case, section 17 of the bill of lading establishes *prima facie* evidence of fair opportunity by clearly outlining the limitation of liability and explaining the shipper's opportunity to avoid the limita-

---

**3.** The bill of lading contracted for carriage of (1) 21 Model M109 vehicles each weighing 50,-200 pounds and measuring 2597 cubic feet; (2) 6 Model ADS vehicles each weighing 45,009 lbs. and measuring 2351 cubic feet; and (3) 7 Model FDCZ vehicles each weighing 44,000 lbs. and measuring 2414 cubic feet.

tion by declaring a higher value.[4] Moreover, the applicable tariff on file with the Federal Maritime Commission gave notice by stating that "[i]f the shipper desires to be covered for a valuation in excess of that allowed by the ocean carrier's through (intermodal) bill of lading form, the shipper must so stipulate...." As an experienced shipper, the government of Egypt frequently negotiates with carriers and therefore should be aware of its rights and options as a shipper, particularly with respect to the manner that it insures its cargo. Because the tariff and the bill of lading both explain the opportunity to declare a higher value and because the Egyptian Government had prior shipping experience, we agree with the district court's conclusion that Aetna failed to sustain its burden that a fair opportunity to declare value did not in fact exist.

### B.

Aetna next argues that Prudential's 3½ percent *ad valorem* rate was so unreasonably high that it effectively deprived Aetna's insured of its opportunity to declare a higher value. We conclude that Aetna cannot now challenge the *ad valorem* rate as being unreasonable when there is no evidence that its insured inquired about making a higher declaration or took any steps toward declaring the value of its cargo. Aetna cannot argue after the fact that the *ad valorem* rate prevented its insured from declaring its value initially. *General Elec. Co. v. M/V NEDLLOYD,* 817 F.2d 1022 (2d Cir.1987) As an experienced shipper, the Egyptian Government certainly was aware of the economic consequences of obtaining greater protection from the carrier, at a higher rate, or obtaining an insurance policy to cover its exposure. The fact that Aetna's insured made no inquiry into declaring a higher value demonstrates that it "made a busi-

ness judgment ... not to explore the possibility of obtaining greater protection ... at [a] higher rate." *Id.* (citing *First Pennsylvania Bank v. Eastern Airlines, Inc.,* 731 F.2d 1113, 1122 (3rd Cir.1984)). We therefore conclude that Aetna is estopped from asserting this argument because of its untimeliness.

### IV

Last, Aetna argues that Prudential may not claim limited liability because LASH Barge 319, containing the vehicles that were ultimately damaged, was allegedly stowed on deck. Aetna claims that on-deck LASH barge stowage is an unreasonable deviation from the terms of the bill of lading because the bill provided for under-deck stowage. We disagree. Stowage of cargo within a self-contained LASH barge affords the cargo the under-deck protection contemplated by section 6 of the bill of lading. Section 6 states:

> goods stowed in poop, forecastle, deckhouse, shelter deck, passenger space, storeroom, *or any other covered in space* shall be deemed to be stowed under-deck for all purposes.

(emphasis applied). Moreover, we find no evidence, and Aetna offers none, of the position LASH Barge 319 occupied during the thirty-eight day period from loading in Baltimore to unloading in Alexandria. Since Aetna, as subrogee of the shipper, has the burden of proving a deviation, we agree with the district court that Aetna failed to sustain this burden.

For the reasons stated above, the judgment of the district court is

AFFIRMED.

---

**4.** Section 17 of the bill of lading provides in pertinent part:

> In case of any loss or damage to or in connection with goods exceeding in actual value $500 ... per customary freight unit, the value of the goods shall be deemed to be $500 ... per customary freight unit on which basis the freight is adjusted and the carrier's liability if

any in any capacity shall be determined on a value of $500 ... per customary freight unit unless the nature of the goods and evaluation higher than $500 shall have been declared in writing by the shipper upon delivery to the carrier and inserted in this bill of lading and extra value paid....