**INTERCARGO INSURANCE CO., Plaintiff,**

v.

**CONTAINER INNOVATIONS, INC., Defendant.**

**Container Innovations, Inc., Third–Party Plaintiff,**

v.

**M/V CAROLINA, her engines, boilers, etc.; Navieras NPR, Inc., Panalpina, Inc.; Old Dominion Freight Line, Inc.; M/V Sea Racer, her engines, boilers, etc., Navylloyd AG; Puerto Rico Freight Systems, Inc.; St. John's Terminal Operating Co., Ltd.; Carribean Maritime Services, Ltd.; and John Does "A Through Z", Third–Party Defendants.**

**No. 99 Civ. 1158 (JSR).**

United States District Court, S.D. New York.

May 22, 2000.

---

James J. Ruddy, Badiak, Will & Maloof, New York City, for Plaintiff.

David Loh, Nicoletti, Hornig, Campise & Sweeney, New York City, for Defendants.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Factually, this case concerns damage to two crates of telecommunication replacement parts shipped from New York to Antigua. Legally, it concerns yet another nuance in the interpretation of the much-litigated liability limitation provision of the United States Carriage of Goods at Sea Act ("COGSA"), 46 U.S.C.App. § 1304(5).

Following discovery, plaintiff and defendant each moved for summary judgment.[1] After review of the parties' written submissions and oral arguments, the Court, in a telephone conference held December 6, 1999, informed counsel that defendant's motion would be granted and plaintiff's motion denied in a written opinion to follow. With apologies to counsel for the delay in the follow-up, the Court hereby confirms those rulings and herewith states the reasons therefor.

The pertinent facts, either undisputed or taken most favorably to plaintiffs, are as follows:

In or around early 1998, a company called Tecore, Inc., which owned the telecommunication parts here at issue, see Pl. 56.1 Stmts. ¶ 3; Def. 56.1 Stmts. ¶ 1, contracted with Panalpina, Inc., a large freight forwarder, to arrange the shipment of the parts from New York to Antigua. See Def. 56.1 Stmts. ¶ 2. Panalpina, as Tecore's agent, then arranged for another freight forwarder, defendant Container Innovations, Inc. ("Container"), to consolidate the shipment with other cargo and arrange for its actual delivery. See Aff. of Mark Carrerra ¶¶ 2, 7, 9; Panalpina Decl. at ¶ 6. Panalpina inquired about Container's rates for insuring the parts, but decided instead to have the shipment insured by plaintiff, Intercargo Insurance Co. ("Intercargo"). See Def. 56.1 Stmt. ¶¶ 5–9, 11.

On March 13, 1998, Container received the shipment and issued a bill of lading for 3 crates, 1 skid, and 6 rolls—or 10 "packages" in all—to be delivered to Observer Communications in St. John's, Antigua. See Pl. 56.1 Stmt. ¶¶ 1–4; Pl.Ex. 3 (Bill of Lading); Def. Amended Response to Pl.

---

**1.** Notices of Voluntary Dismissal were entered with respect to third-party defendants Navieras NPR Inc., Old Dominion Freight Line, and Panalpina, and on November 22, 1999, the Court granted the unopposed motion for summary judgment in favor of two other third-party defendants, Puerto Rico Freight Systems, Inc. and Carribean Maritime Services, Ltd. For reasons detailed below, the claims against the remaining third-party defendants, M/V Sea Racer, Navylloyd AG, and St. John's Terminal Operating Co., are dismissed as a result of the instant decision.

56.1 Stmts. ¶ 4. The goods arrived in Antigua on March 31, 1998, and were released the next day for pickup by the consignee (Observer) or the consignee's agent. *See* Third Party Def. Mem. of Law at 1; Padilla Decl. Ex. 7. The parts remained at the Antigua Port Authority until April 21, 1998, at which point they were picked up by Nesbitt Trucking. *See* Third Party Def. Mem. of Law at 1; Padilla Decl. Exs. 9–10. At that point, two crates were found to be damaged. *See* Third Party Def. Mem. of Law at 1; Padilla Decl. Exs. 9–10.[2]

Intercargo, as insurer of the goods, thereupon arranged for the damaged crates to be inspected by a technical consultant, who found that the "8 Channel Base Station" in one of the damaged crates was damaged beyond repair but that the "24 Channel Base Station" in the other damaged crate had suffered only minor damage. *See* Pl. 56.1 Stmt ¶¶ 7–8; Pl.Ex. 8. Based on this assessment, Intercargo paid Tecore $42,093.64 after application of the deductible and salvage costs. *See* Pl. 56.1 Stmt. ¶ 10; Pl.Ex. 9. Intercargo then brought the present action against Container to recover the amount paid to Tecore. Container responded by claiming, *inter alia*, that under COGSA its liability is limited to $500 per package (here $1,000 since two of the packages were damaged).

COGSA "applies ex proprio vigore to all contracts for carriage of goods by sea between the ports of the United States and the ports of foreign countries." *Nippon Fire & Marine Insurance Co. v. M.V. Tourcoing*, 167 F.3d 99, 100 (2d Cir.1999) (per curiam). The provision of COGSA here pertinent states that:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... or in case of goods not shipped in packages, per customary freight unit ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided,* That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

46 U.S.C.App. 1304(5).[3] Container is considered a "carrier" for the purposes of COGSA. *See M. Prusman Ltd. v. MV Nathanel,* 670 F.Supp. 1141, 1143 (S.D.N.Y.1987). Thus, if COGSA's above-quoted liability provision is here applicable, the $500–per–package limit serves both as a lower limit to liability and as a presumptive ceiling to liability.

■ COGSA's $500 per package limit does not apply, however, unless the shipper is given a "fair opportunity" to declare a higher value, pay the corresponding ad valorem rate, and thereby obtain the increased coverage that COGSA permits. *See, e.g. Nippon Fire & Marine,* 167 F.3d at 101; *General Electric v. MV Nedlloyd,* 817 F.2d 1022, 1028–29 (2d Cir.1987). "[P]rima facie evidence of that opportunity is established when it can be gleaned from the language contained in the bill of lad-

---

**2.** Although Container asserts that the lack of notation of any damage prior to the time of pick-up suggests that the damage occurred while the goods were being stored at the Port Authority, *see* Def. Mem. in Opp. to Pl. Mot. at 8, *citing* Decl. of Stephen Mendes, dated Oct. 18, 1999, annexed to Mem. of Third–Party Defs. ("Mendes Aff.") at ¶ 14, Intercargo asserts that it is not clear when or how the damage occurred, *see* Pl. Opp. to Def. 56.1 Stmts ¶ 14.

**3.** For the historical background of COGSA and the $500 limit, see *General Electric Co. v. MV Nedlloyd,* 817 F.2d 1022, 1023–24 (2d Cir.1987).

ing." *General Elec.*, 817 F.2d at 1029. If this prima facie showing is made, the burden then shifts to the shipper to show that a fair opportunity did not in fact exist. *See id.*

As summarized by Judge Mukasey in *Royal Insurance Co. v. M.V. ACX RUBY*, 97 Civ. 3710(MBM), 1998 WL 524899 (S.D.N.Y.1998):

> The Second Circuit has not adopted rigid rules for determining when a bill of lading provides prima facie evidence of fair opportunity. However, the Circuit has held that a bill of lading is sufficient when it (1) explicitly incorporates COGSA's provisions and (2) provides a space for declaring excess value.... [S]ubsequent cases from this District have gone one step further, and held that the second element—a space for declaring higher value—is not an absolute requirement.... However, in each of these cases, the bill of lading explicitly incorporated COGSA and specifically stated that the shipper would have to declare excess value in order to avoid COGSA's liability limitations. Thus, it appears safe to say that, at a bare minimum, a bill of lading must explicitly incorporate COGSA's provisions or refer in some way to the $500 per package limitation in order to constitute prima facie evidence of fair opportunity.

Id. at *3.

In this regard, Container's bill of lading here in issue, *see* Pl.Ex. 4; Bill of Lading, attached to Aff. of David Y. Loh in Further Support of Def. Motion for Summary Judgment, states as follows:

> In consideration of the rate charged for carriage being dependent on the value of the goods and being based upon an agreed valuation of not more than five hundred ($500.00) dollars per shipment, unless a greater value is declared at the time of shipment and an additional charge of one (1%) percent thereof paid, the shipper or owner of the goods agrees that Carrier shall not be liable in any event for more than the value so declared, nor unless a greater value is declared, for more than $500.00, or more than the actual value if same is less than $500.00. Neither any oral declaration nor statement of value for Governmental or Custom purposes nor the presentation of invoices for use in foreign customs, collection of C.O.D. amounts ir other purposes, nor the declaration of value for insurance, nor instructions to the Carrier to insure, shall be deemed an [sic] declaration of value, nor shall such offering supplement or amend or alter in any way the liability of carrier for the agreed value at time of shipment and on which the charge for transportation is based.

The bill of lading also provides a space for the shipper to write in the extra declared value if the shipper is willing to pay the additional charge.

With one exception, this reasonably states the liability limitations of COGSA and provides the shipper with a fair opportunity to declare a higher value and obtain insurance thereof if it pays an additional one percent of the excess value. The exception is that Container's bill of lading mistakenly states that the $500 limit is per "shipment" rather than per "package." Plaintiff argues that this mistake eliminates any limitation whatever. *Cf. Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800, 815–16 (2d Cir.1971); *David Crystal, Inc. v. Cunard S.S. Co.,* 339 F.2d 295, 298–99 (2d Cir.1964). The relevant provision of COGSA, however, 46 U.S.C.App. § 1303(8), states as follows:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.

The plain meaning of this language is to nullify private attempts to go below the COGSA $500–per–package limit, but not to eliminate the statutory limit. As stated by the Court of Appeals, "the mere attempt to limit liability at a level lower than permitted by COGSA does not serve to strip a carrier of the COGSA limit." *Binladen BSB Landscaping v. MV Nedlloyd Rotterdam,* 759 F.2d 1006, 1007, n. 12 (2d Cir. 1985); *see also Vision Air Flight Service v. MV National Pride,* 155 F.3d 1165, 1169–70 (9th Cir.1998) (finding that if a carrier misstates the COGSA provisions and does not invoke COGSA itself, but provides notice of limited liability, "that does not void the limitation of liability provision altogether and render COGSA inapplicable. Rather COGSA's limitation of $500 per 'package' or 'customary freight unit' simply applies to each package or customary freight unit, properly defined.")

Nor does the mistaken limitation to $500–per–shipment rather than $500–per–package in any way undercut the fair opportunity that the bill of lading otherwise provides to obtain higher coverage for an additional charge. Indeed, if anything, the mistaken reduction in the statutory limitation gives the customer an added incentive to seek additional liability coverage.

In the face of defendant's showing, plaintiff has not offered material evidence to rebut the presumption of fair opportunity. The shipper's agent, Panalpina, one of the largest freight forwarders in the world, is a sophisticated party that was "familiar with all international statutes and regulations governing the transportation of goods both within the U.S. and overseas." Panalpina Decl. at ¶ 2. In this very case, Panalpina, on behalf of Tecore, initially investigated whether or not to purchase the additional insurance proffered by Container but decided instead to purchase additional insurance from Intercargo. *See* Def. 56.1 Stmt. ¶¶ 5–9, 11; Panalpina Decl. at 8–11. Consequently, there is every reason to believe that Panalpina, as Tecore's agent, had knowledge of COGSA's actual liability limitation, and there is no evidence whatever to the contrary. *See, e.g., Vision Air,* 155 F.3d at 1169; *Aetna Insurance Co. v. M/V Lash Italia,* 858 F.2d 190, 193 (4th Cir.1988); *Union Carbide v. M/V Michele,* 764 F.Supp. 783, 786 (S.D.N.Y.1990); *cf. Royal Insurance,* 1998 WL 524899, at *5 (declining to consider the sophistication of the shipper in assessing the prima facie showing of fair opportunity, but suggesting that it might be an appropriate factor in rebutting the assumption of fair opportunity once the prima facie showing has been made).

For the foregoing reasons, plaintiff's motion is denied, defendant's motion is granted, and final judgment will be entered awarding plaintiff the sum of $1,000 from defendant and dismissing the case as to all third-party defendants.[4] Clerk to enter judgment.

SO ORDERED.

---

**4.** Although defendant presented other arguments to the effect that it was not liable to plaintiff at all or that, if it were, the remaining third-party defendants were then liable to defendant for reimbursement, defendant's counsel represented at oral argument that defendant would not seek to pursue these arguments further if the Court found that the COGSA limitation applied (subject, however, to preserving these defenses and third-party claims if the Court's COGSA determination were reversed on appeal). Accordingly, the Court need not reach these arguments and all remaining claims against all remaining third-party defendants may be dismissed.