**FRANCOSTEEL CORPORATION,**
**Plaintiff,**

v.

**M.V. PAL MARINOS, her engines, boilers, etc., Pal Marinos Marine Co., Europe–Overseas Steamship Lines, N.V. and Casu Transport Ltd., Defendants.**

**No. 94 Civ. 1992 (RLC).**

United States District Court,
S.D. New York.

April 27, 1995.

Donovan, Parry, Walsh & Repetto, New York City (James F. Sweeney, of counsel), for plaintiff.

Walker & Corsa, New York City (Scott A. Walker, of counsel), for defendant Pal Marinos Marine Co.

ROBERT L. CARTER, District Judge.

Defendant Pal Marinos Marine Co. ("Pal Marinos") moves for an order pursuant to Rule 56, F.R.Civ.P., granting partial summary judgment limiting the liability of Pal Marinos to $500 per package pursuant to the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. §§ 1300–1315 (1988). Plaintiff Francosteel Corporation ("Francosteel")

cross-moves for an order pursuant to Rule 12(f), F.R.Civ.P., and/or Rule 56(a), F.R.Civ. P., granting partial summary judgment striking Pal Marinos' second affirmative defense insofar as it alleges a $500 per package limitation of liability.

## I.

This action was commenced by plaintiff Francosteel to recover for alleged damage to a shipment of steel coils carried aboard the vessel Pal Marinos, which is owned by defendant Pal Marinos Marine Co. The coils were loaded at Antwerp, Belgium and discharged at various points in the United States. The shipment was carried under several bills of lading, all of which were issued on identical forms by defendant Europe–Overseas Steamship Lines, N.V. ("Eurolines").[1]

COGSA applies of its own force to "all contracts for carriage of goods by sea to or from ports of the United States in foreign trade," 46 U.S.C.App. § 1312 (1988), and the parties agree that the bill of lading at issue here falls within that category. COGSA limits the liability of carriers of cargo falling under the purview of the act to no more than $500 in United States currency per package, but it allows carriers and shippers to set a higher maximum "[b]y agreement." 46 U.S.C.App. § 1304(5) (1988). In the absence of an agreement to the contrary, therefore, the maximum liability to which defendant Pal Marinos can be exposed is $500 per package.

COGSA is based on the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, known as the "Hague Rules." In 1977, a number of states signed the Protocol to Amend the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, known as the "Visby Amendments," which together with the Hague Rules are known as the "Hague Visby Rules." The Hague Visby Rules amended the Hague Rules by, among other things, raising the carrier liability limitation. The Hague Visby Rules were again amended in 1979 to raise the liability limitation. Parties to bills of

lading subject to COGSA often raise the liability limitation above $500 by incorporating into their bills of lading the liability limitation provisions of the Hague Visby Rules and their amendments. *See, e.g., Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Acadia Forest,* 683 F.Supp. 444, 447 (S.D.N.Y.1988) (Mukasey, J.).

## II.

Clause 9 of the bill of lading at issue here, the "Paramount Clause," states, "The contract evidenced by this Bill of Lading shall have effect subject to the Hague Rules or Hague Visby Rules as the case may be or any equivalent Rules or amendments thereof only. [sic] (a) if so incorporated by Statutory Instrument in the country in which claims hereunder are properly brought, or (b) to the extent whereby only the rights, liberties, limitations and defences available to the Carrier are incorporated." Clause 11, the "Limitation of Liability" clause, states, "Without prejudice to the foregoing neither the Carrier or the vessel shall in any event be liable for any loss or damage of whatsoever nature to or in connection with the goods in an amount exceeding U.S. $500 per package ... unless the higher value of such goods be inserted in this Bill of Lading...."

Plaintiff contends that clause 9 expressly incorporates the Hague Visby Rules and, in the alternative, that the bill of lading is ambiguous with respect to whether the Hague Visby Rules are incorporated. Defendant Pal Marinos contends that clause 9 expressly incorporates COGSA.

The court rejects the contentions of both parties that clause 9 expressly incorporates either COGSA or the Hague Visby Rules and finds that ambiguity exists regarding which rules the bill of lading incorporates. Clause 9 states that the bill of lading "shall have effect subject to the Hague Rules or Hague Visby Rules *as the case may be* or any equivalent Rules or amendments thereof" (emphasis added), but it does not provide any criteria for determining which of those rules

---

1. Since the bills of lading were identical, this opinion will refer to them collectively as "the bill of lading."

applies. Bills of lading often specify that they are subject to the rules adopted by the country in which the bill of lading was issued or from which the shipment departed, *see, e.g., Francosteel v. M/V DEPPE EUROPE,* 90 Civ. 1442, 1990 WL 121683, at *1 (S.D.N.Y.1990) (Patterson, J.); *Associated Metals & Minerals Corp. v. M/V ARKTIS SKY,* 90 Civ. 4562, 1991 WL 51087, at *3 (S.D.N.Y.1991) (Martin, J.), but the instant bill of lading gives no such indication.

Plaintiff asserts that the Hague Visby Rules must be applied because clause 9 lists them among the rules that may be incorporated. This interpretation is implausible because it ignores the "as the case may be" language. Defendant Pal Marinos asserts that clause 9 provides that the bill of lading shall have effect subject to whatever rules are in effect in the country in which the claims are brought. (Def.Mem. in Supp. of Mot. for Partial Summ. J. at 4.) This interpretation is suspect because "parties to a contract should have the assurance of their potential liabilities at the time of contract, *i.e.,* at the time and place of issuance of the bill of lading." *M/V DEPPE EUROPE,* 1990 WL 121683, at *3. In the absence of a clear intention to include such uncertainty in a contract, the court is reluctant to read the existence of such an intention into a contract.

More importantly, as Judge Conboy of this district has found in an unrelated action regarding an identically worded bill of lading, defendant's interpretation is unacceptable because "it renders 9(b) superfluous"—if clause 9(a) means that the law of the situs state should be applied, then clause 9(b) merely means that the rights, liberties, limitations and defenses of the law of the situs state should be applied. *Francosteel Corp. v. M/V Kapetan Andreas G,* No. 92 Civ. 0633, 1993 WL 496893, at *2 (S.D.N.Y.1993) (Conboy, J.). Defendant argues that clause 9(b) functions to extend the rules adopted by the situs state to situations that they would not otherwise cover, for example where the rules of the situs state apply only to outgoing shipments and the shipment at issue was shipped into that state. The court does not find evidence of any such intention in clause 9, however. Clause 9(a) does not state that

it should be applied only to those cases in which the shipment is covered by the rules adopted by the situs state, and clause 9(b) does not state that it should be used to extend those rules.

The bill of lading is further ambiguous because it is unclear when to apply clause 9(a) and when to apply clause 9(b). As plaintiff notes, the two clauses "are not phrased in the *subjunctive (i.e.,* the latter shall apply only if the former does not). Rather, they are phrased in the *disjunctive (i.e.,* either one can apply). (Pl.Mem. in Supp. of Cross–Mot. to Strike Def.'s Second Affirmative Defense & in Opp'n to Def.Mot. for Summ.J. at 3.)

Plaintiff argues that the bill of lading is also ambiguous because clause 9, which mandates the application of the Hague Visby Rules and their amendments in some cases, thus raising the minimum liability of the carrier to more than $500 per package in those cases, conflicts with clause 11, which limits the liability of the carrier to no more than $500 per package. Defendant Pal Marinos disputes this interpretation, arguing that clause 11 is a residual clause which applies only in the absence of any other per package limitations. Judge Mukasey of this Court has propounded a third interpretation. In interpreting a clause similar to clause 11, Judge Mukasey found that "[a]lthough that clause does not mention COGSA specifically, it seems plain that the clause refers to the $500 per package limitation provided by 46 U.S.C.App. § 1304(5)." *Daval Steel Prods.,* 683 F.Supp. at 445; *see also Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415, 425 (5th Cir.1981) (bill of lading clause which stated that "[t]he responsibility of the carrier shall in no case … exceed the amount of $500.00 per package" merely restated § 1304(5) and did not absolutely prohibit avoidance of $500 limitation). Noting that "[t]here is no offense to any canon of construction in reading the bill of lading clauses that refer to COGSA as applying when COGSA itself applies, but not when it doesn't," Judge Mukasey found that the $500 per package limitation did not apply and that the case was governed by the Hague Visby Rules. *Daval Steel Prods.,* 683 F.Supp. at 447. The court concurs in Judge

Mukasey's interpretation of the significance of clause 11 because any other interpretation would render meaningless clause 9's invocation of the Hague Visby Rules and their amendments.

### III.

To resolve the ambiguity in the bill of lading, the court must first turn to the extrinsic evidence offered by the parties regarding their intents in signing it.[2] *Empire Hair Processing Corp. v. S.S. Aconcagua,* 91 Civ. 0501, 1992 WL 354497, at \*8 (S.D.N.Y. 1992) (Leisure, J.) (before rules of construction are applied to shed light on ambiguity in bill of lading, parties should be allowed to offer extrinsic evidence regarding their intents). In the context of a motion for summary judgment, the evidence that the court may examine is limited to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," Rule 56(c), F.R.Civ.P., and the affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e), F.R.Civ.P.

Plaintiff submits a declaration by Jan Weijburg, director of SATEM N.V., the shipper of the cargoes at issue, dated October 24, 1994, which demonstrates that his intention in acceding to the bill of lading was to increase the carrier's maximum liability to above $500 per package. Plaintiff is less successful in demonstrating defendant's intention in issuing the bill of lading. Plaintiff asserts that the defendant's intent to increase its maximum liability to above $500 per package is evident from an undated declaration submitted by Weijburg and from a letter attached to that affidavit from John Oyen, vice president of Antwerp Shipping and Chartering Services N.V., which issued the bill of lading. The Oyen letter is addressed to Daval S.A., of which SATEM N.V. is a wholly owned subsidiary, and dated No-

vember 14, 1994. The pertinent part of the letter states, "Further to your telephonic request, we can advise you that at the time ANTWERP SHIPPING & CHARTERING SERVICES N.V. in accordance with instructions from their principals, Messrs. EUROLINES N.V., have mainly been using/issueing [sic] Bills of Lading in accordance with The Hague–Visby Rules." This letter does not constitute competent evidence regarding the bill of lading at issue here. First, Oyen states merely that he "mainly" issues bills of lading in accordance with the Hague Visby Rules—he does not say whether the bill of lading at issue here falls within that category. Second, Oyen discusses bills of lading that were issued "at the time," but he does not identify what time period that was or whether the instant bill of lading was issued during that time period. Defendant Pal Marinos offers no evidence regarding its intent in issuing the bill of lading.

In the absence of evidence establishing the defendant's intent, neither the plaintiff nor the defendant has presented enough evidence to prevail on the motions for summary judgment. Plaintiff urges the court to apply the rule of contract construction under which bills of lading, as adhesion contracts, are construed against the carrier. *See Mitsui & Co., Ltd. v. American Export Lines, Inc.,* 636 F.2d 807, 822 (2d Cir.1981). Defendant, which has presented no extrinsic evidence regarding the intent of the parties in acceding to the bill of lading, does not aver that it might present further evidence were discovery allowed to proceed on this issue. *See Schiess–Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 127–28 (2d Cir.1978) (remanding case to allow parties opportunity to present extrinsic evidence before court gives final construction to contract). Nor does it seem likely that defendant would succeed in obtaining evidence regarding its intent in issuing this poorly worded form. *See Daval Steel Prods.,* 683 F.Supp. at 446 (noting that "seeking the intent of the parties with re-

---

**2.** The court may not consider extrinsic evidence in the course of deciding plaintiff's motion pursuant to Rule 12(f), F.R.Civ.P. However, plaintiff moves in the alternative for partial summary judgment pursuant to Rule 56, F.R.Civ.P., and

the court may consider extrinsic evidence in connection with this motion as well as in connection with defendant's motion for partial summary judgment.

spect to a barely legible standard form replete with typographical errors was a 'fictional pursuit' "). Therefore, the court will apply the rule of construction. *See, e.g., Daval Steel Prods.,* 683 F.Supp. at 447 (applying rule of construction to resolve ambiguity in bill of lading on plaintiff's motion to strike and defendants' cross-motion for summary judgment).

 Assuming that the plaintiff would want to know the terms of the bill of lading before acceding to it, the court finds that the phrase "as the case may be" in clause 9 means that the clause refers to the version of the Hague Rules or Hague Visby Rules adopted by the country from which the shipment departed. On the assumption that the owner of the cargoes would prefer to have all the protections offered by whatever rules apply, rather than merely allowing the carrier to have the benefit of those rules, clause 9(a) will be applied if possible, and only where the rules adopted by the state from which the shipment departed have not been adopted in the situs state will clause 9(b) be applied.

Here, the shipment departed from Belgium, which has adopted the Hague Visby Rules and the 1979 amendments thereto. 6 Benedict on Admiralty, at 1–29 & 1–32.3 (7th ed. 1993). The United States has not adopted the Hague Visby Rules, so clause 9(a) does not apply. Therefore, the rights, liberties, limitations and defenses available to the carrier under the Hague Visby Rules and their amendments are incorporated into the contract, thus raising the carrier's maximum liability to above $500 per package.

### IV.

Plaintiff's cross-motion for an order pursuant to Rule 56(a), F.R.Civ.P., granting partial summary judgment striking Pal Marinos' second affirmative defense insofar as it alleges a $500 per package limitation of liability, is granted. Plaintiff's cross-motion for an order pursuant to Rule 12(f), F.R.Civ.P., is denied. Defendant Pal Marinos' cross-motion for an order pursuant to Rule 56, F.R.Civ.P., granting partial summary judg-

ment limiting the liability of Pal Marinos to $500 per package, is denied.

IT IS SO ORDERED.