The **NIPPON FIRE & MARINE INSURANCE COMPANY**, Plaintiff–Appellant,

v.

**M.V. TOURCOING, Wilhelmsen Lines A.S., and Maher Terminals, Inc.,** Defendants–Appellees.

No. 98–9032.

United States Court of Appeals, Second Circuit.

Argued Feb. 1, 1999.

Decided Feb. 2, 1999.

David T. Maloof, Maloof & Browne, LLP, New York, NY, for Plaintiff–Appellant.

James M. Kenny, Kenny & Stearns, New York, N.Y. (Michael C. Mulé, of counsel ), for Defendants–Appellees.

Before: CABRANES and STRAUB, Circuit Judges, and McCURN, District Judge.*

PER CURIAM:

Plaintiff Nippon Fire & Marine Insurance Company ("Nippon") appeals from a final judgment of the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *Judge* ) dismissing defendant vessel, which had been named but not "arrested," and ordering recovery of $3,750 by Nippon—for damage to cargo shipped by Nippon's insured—from a cargo carrier, defendant Wilhelmsen Lines A.S. ("Wilhelmsen"), and a stevedore, defendant Maher Terminals, Inc. ("Maher"). Nippon contends that the District Court erred by applying the $500 per package limitation on liability contained in the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.*, and in Clause 11 of the bill of lading. *See Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing,* 979 F.Supp. 206 (S.D.N.Y.1997). We conclude that COGSA compulsorily applies to this case, that the parties did not agree to a higher liability limit, and that the shipper had a "fair opportunity" to declare a higher value and pay an excess charge in exchange for greater liability. Accordingly, we affirm the District Court's judgment.

---

* The Honorable Neal P. McCurn, of the United States District Court for the Northern District of New York, sitting by designation.

1. The statute provides:

   Every bill of lading or similar document of title which is evidence of a contract for the carriage

## I.

Wilhelmsen carried a printing press aboard the M.V. Tourcoing from Japan to the United States for Nippon's insured, Komori America Corp. During the course of unloading by Maher, several parts of the printing press (which had been disassembled into thirteen containers) were damaged. In this action, Nippon seeks recovery of $1,186,-467.87 that it paid Komori pursuant to a marine cargo insurance policy.

Because Wilhelmsen and Maher admitted liability, the only issue presented by the parties' cross-motions for summary judgment was whether Wilhelmsen, Maher, or both were entitled to the $500 per package limitation on liability contained in COGSA and in Clause 11 of the bill of lading. The District Court concluded that the bill of lading's Clause 7 (the "clause paramount") did not create any ambiguity concerning application of the $500 per package limit in this case; nor did it otherwise deprive the shipper of a fair opportunity to pay a higher rate for a higher liability limit. The District Court therefore held that the $500 per package liability limit applied to Wilhelmsen. For reasons not relevant to this appeal, the District Court ultimately found that this limit extended to Maher's liability as well.

The District Court entered judgment dismissing the defendant vessel and ordering recovery of $3,750 by Nippon from Wilhelmsen and Maher. This timely appeal followed.

## II.

COGSA, which is based upon the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading (the "Hague Rules"), applies *ex proprio vigore* to all contracts for carriage of goods by sea between the ports of the United States and the ports of foreign countries. 46 U.S.C.App. §§ 1300, 1312.[1] Accordingly, be-

---

of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter.
46 U.S.C.App. § 1300.
This chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade.... The term

cause in this case the cargo was shipped from Japan to the United States, COGSA applies.

■ The statute provides that the carrier's liability is limited to $500 per package unless a higher value is declared by the shipper and inserted in the bill of lading, or the parties agree to a higher limit. *Id.* § 1304(5).[2] Under the "fair opportunity" doctrine, however, the COGSA limit is inapplicable if the shipper does not have a fair opportunity to declare higher value and pay an excess charge for additional protection. *See General Elec. Co. v. M.V. Nedlloyd,* 817 F.2d 1022, 1028 (2d Cir.1987).

■ In addition to the applicable terms of COGSA, Clause 11 of the bill of lading in this case expressly limits liability to $500 per package.[3] In addition, Box 16 on the front of the bill of lading is labeled "DECLARED VALUE (SEE CLAUSE 11 RE: $500 LIMIT)" and provides a space for the shipper to insert a higher value; no such higher value was declared. Clause 11 and Box 16 demonstrate that the parties did not contract to avoid the COGSA liability limit. Furthermore, Clause 11 and Box 16 demonstrate that the shipper had a fair opportunity to declare higher value in order to increase the carrier's liability. *See id.* at 1029 ("[T]he language on the back of the [bill of lading] incorporating COGSA's provisions and the

space for declaring excess value on the front are sufficient notice of the limitation of liability and the means of avoiding it."); *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam,* 759 F.2d 1006, 1017 n. 12 (2d Cir.1985) (same).

■ Nippon's arguments on appeal are based entirely upon the bill of lading's Clause 7, the "clause paramount," which states in relevant part:

> With respect to water transportation, this Bill of Lading shall be subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which Act is incorporated herein, or to any law similar to the 1924 Hague Rules or Hague–Visby Rules if such Law is compulsorily applicable to this Bill of Lading in the country where suit is brought. . . .

As noted above, an international effort to unify the rules of law relating to bills of lading resulted in the 1924 Hague Rules, which the United States has adopted and implemented through COGSA. Many of the countries that adopted the Hague Rules, but not the United States, also have adopted a 1968 amending protocol (the "Visby Rules") and a 1979 amending protocol (the "S.D.R. Protocol") imposing standard per-package or per-kilogram limitations which generally are higher than the $500 per package limitation

---

"foreign trade" means the transportation of goods between the ports of the United States and ports of foreign countries. . . . *Id.* § 1312.

2. The subsection provides in relevant part:

**Amount of liability; valuation of cargo**
Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.
By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: Provided, That such

maximum shall be not less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.
Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading.
46 U.S.C.App. § 1304(5).

3. Clause 11, which closely tracks the operative language of 46 U.S.C.App. § 1304(5), provides:

**Package Limitation.**
Neither the Carrier, its servants or subcontractors nor the vessel shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding U.S. $500 per package . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in this bill of lading (Box 16) AND the shipper has paid the additional charges on such declared value. . . .

of COGSA. *See* William Tetley, *Package & Kilo Limitations and The Hague, Hague/Visby and Hamburg Rules & Gold*, 26 J. Mar. L. & Com., Jan. 1995, at 133–35 & App. A.

Nippon relies upon several cases from the Southern District of New York which involve paramount clauses referring to the Hague–Visby Rules. In general, these cases stand for the proposition that if the bill of lading makes the Hague–Visby Rules applicable to the shipment at issue, then the parties have agreed to the higher liability limitations contained in those rules. *See, e.g., Francosteel Corp. v. M/V Pal Marinos*, 885 F.Supp. 86, 90 (S.D.N.Y.1995); *Daval Steel Prods. v. M/V Acadia Forest*, 683 F.Supp. 444, 447 (S.D.N.Y.1988); *Francosteel Corp. v. M/V Kapetan Andreas G*, 1993 A.M.C. 1924, 1993 WL 496893, at *2 (S.D.N.Y. April 6, 1993); *Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 1991 A.M.C. 1499, 1991 WL 51087, at *3–4 (S.D.N.Y. April 3, 1991); *Francosteel Corp. v. M/V Deppe Europe*, 1990 A.M.C. 2962, 1990 WL 121683, at *4 (S.D.N.Y. Aug. 10, 1990). The judges in some of these cases held that the incorporation of the Hague–Visby Rules does not conflict with a specific provision—such as Clause 11 here—tracking the $500 per package language of COGSA, because the latter type of provision is meant to apply only when COGSA applies. *See Pal Marinos*, 885 F.Supp. at 88–89; *Daval*, 683 F.Supp. at 447. Moreover, in cases where it was unclear from the bill of lading whether the Hague–Visby Rules were meant to apply, several of these judges resolved the ambiguity against the carrier and adopted the higher liability limit. *See Pal Marinos*, 885 F.Supp. at 89–90; *Deppe Europe*, 1990 WL 121683, at *4; *see also Daval*, 683 F.Supp. at 447.

In this case, however, the references in Clause 7 to the Hague–Visby Rules create no ambiguity. Clause 7 expressly incorporates COGSA, and it simply acknowledges that suit might be brought in a country where rules other than COGSA compulsorily apply. As noted previously, COGSA—and its $500 per package liability limit—unquestionably governs this case, and thus the holdings noted above are inapposite.

■ Finally, we emphatically reject Nippon's argument that Clause 7 is an allegedly invalid "floating choice of law" clause incorporating the varying liability limits of approximately 100 different Hague and Hague–Visby countries. In particular, Nippon contends that the shipper could not have been certain, at the time the bill of lading was issued, where suit would be brought and which rules would apply. Such uncertainty, however, is inherent to international shipping, and it in fact explains the longstanding efforts, embodied in the various multilateral conventions discussed above, to create greater uniformity in liability limits and other rules relating to bills of lading. Contrary to Nippon's strained interpretation, Clause 7 does not increase this uncertainty by somehow incorporating otherwise inapplicable rules; as noted above, Clause 7 merely recognizes the potential for application of differing rules depending upon where suit is brought. Therefore, many shippers face the same asserted uncertainties faced by Nippon's insured, but the COGSA limitation routinely applies nonetheless.

In any event, we agree with the District Court that on a shipment from Japan to the United States, the shipper could hardly avoid recognition of the United States as a likely forum for suit. More importantly, the very fact that the shipper insured its cargo through Nippon demonstrates that it appreciated the substantial likelihood of a relatively low limit on the carrier's liability. *See, e.g., Vision Air Flight Serv., Inc. v. M/V National Pride*, 155 F.3d 1165, 1169 (9th Cir.1998) (shipper "cannot contend that it was not given a 'fair opportunity' to opt for higher coverage precisely because [the shipper] *did* opt for higher coverage when it insured the [cargo] through an independent entity").

In sum, the shipper had a "fair opportunity" to contract for greater protection, and thus the District Court did not err when it gave effect to the $500 per package liability limit which both COGSA and the bill of lading unambiguously require.

The judgment of the District Court is affirmed.