**VAN OMMEREN BULK SHIPPING B.V., Plaintiff,**

v.

**COOPER/T.SMITH STEVEDORING CO., INC., Defendant.**

**No. Civ. AMD 98–407.**

United States District Court, D. Maryland.

Feb. 8, 1999.

Manfred W. Leckszas, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for plaintiff.

J. Stephen Simms, Vincent J. Columbia, Jr., Greber & Simms, Baltimore, MD, for defendant.

### MEMORANDUM

DAVIS, District Judge.

In this admiralty action plaintiff Van Ommeren Bulk Shipping B.V. ("Van Ommeren") seeks indemnification from defendant Cooper/T. Smith Stevedoring Co., Inc. ("Cooper/T.Smith") for damage caused to 15

stainless steel coils shipped from Antwerp, Belgium to Baltimore, Maryland. Van Ommeren, the charterer of the vessel, settled the underlying damage claim with the consignee's cargo underwriters for $57,000. Subsequently, Van Ommeren sued Cooper/T. Smith, the stevedore responsible for unloading the coils from the vessel, on theories of negligence, breach of contract and breach of warranty.

Pending before the court is Cooper/T. Smith's motion for partial summary judgment, which seeks a declaration that its potential liability is limited to $7500. Specifically, Cooper/T. Smith argues that because the bill of lading and the United States Carriage of Goods at Sea Act, (COGSA), 46 U.S.C.App. § 1300 *et seq.*, limit a carrier's liability to $500 per package, and it is undisputed that each coil constituted one package and that 15 coils suffered damage before the consignee received them, Cooper/T. Smith's potential liability can not exceed $7500. On the other hand, Van Ommeren argues that because a Belgian court (or other European court where it might have been sued) would have ignored the liability limits and the choice of law and forum selection provisions included in the bill of lading, its $57,000 payment to the consignee's underwriters was reasonable. The issues have been thoroughly briefed and no hearing is necessary. Local Rule 105.6 (D.Md.1997). For the reasons discussed below, I will grant Cooper/T. Smith's motion for partial summary judgment, limiting its potential liability to $7500.

## I

The material facts are undisputed or, if disputed, shall be set forth in the light most favorable to plaintiff. Van Ommeren is a Dutch corporation and the charterer of the M/V SERAFIN TOPIC, the vessel involved in this litigation. It contracted with Avesta Sheffield, Ltd. (the shipper), a British company, for the shipment of 57 stainless steel skidded coils from Belgium to Baltimore in October 1995. The contract provided that the coils were to be shipped to Avesta Shef-field, Inc. (Sheffield), the consignee, a subsidiary of the shipper located in Illinois. The goods were shipped on the M/V SERAFIN TOPIC in November 1995. Van Ommeren engaged Cooper/T. Smith to discharge the coils from the ship in Baltimore. Shortly after their receipt, the consignee notified Van Ommeren that 15 of the steel coils were damaged. Van Ommeren alleges that the damage was caused, *inter alia*, by Cooper/T. Smith's use of a "lifting gear consisting of flat chains rather than braided wire" to discharge the cargo. *See* Pl.'s Compl. ¶ 4.

The damage was assessed at $76,345. Sheffield's cargo underwriters reimbursed Sheffield for the loss, and consequently sought to recover from Van Ommeren the full amount it paid for the claim. After negotiations with the underwriters, during which it received a general threat that suit would be filed absent settlement, Van Ommeren agreed to pay $57,000 to satisfy the claim. It then filed this indemnity action against Cooper/T.Smith.

The bill of lading contained the following clauses, *inter alia*, in pertinent part:

CLAUSE PARAMOUNT: This Bill of Lading shall have effect subject to the provisions of the carriage of goods by sea act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said act. . . . [1]

LAW AND JURISDICTION: The Bill of Lading shall be construed according to the Laws of the United States, *and the Shippers/Consignee and holder hereof agree that any suits against the Carrier shall be brought in the Federal Courts of the United States in the City of New York.*

CARRIER'S LIMIT ON LIABILITY: In case of any loss or damage in connection with goods exceeding in value the equivalent of Dlrs 500 lawful money of the Unit-

---

**1.** "The function of the 'Clause Paramount' is to specify the law to be applied to the contract of carriage." *Farrell Lines, Inc. v. Columbus Cello-Poly Corp.,* 32 F.Supp.2d 118, n. 4 (S.D.N.Y. 1997), *aff'd sub nom. Farrell Lines, Inc. v. Ceres Terminals Inc.,* 161 F.3d 115 (2d Cir.1998) (quoting 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 10–11 at 51 (2d ed.1994)).

ed States per package or in the case of goods not shipped in packages, per shipping unit, the value of goods shall be deemed to be Dlrs 500 per package or per shipping unit. (emphasis added).[2]

Thus, the bill of lading incorporates COGSA as a contract term. COGSA also applies *ex proprio vigore* to the acts complained of herein because the alleged damage occurred during the discharge of goods from the ship at an American port. *See* 46 U.S.C.App. § 1300 ("Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter."); 1301(e) ("[T]he term 'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship.").

On its face, the liability limitation protection in COGSA and the bill of lading applies only to carriers. This protection, however, has been extended to stevedores, such as Cooper/T. Smith through "Himalaya Clauses."[3] *See Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 302, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959) (holding that although COGSA did not apply to stevedores, parties can contractually extend its application to "stevedores or other agents of the carrier ..."); *Wemhoener*, 5 F.3d at 742 (recognizing that the defendant stevedore was protected by a clause that "define[d] third party beneficiaries as subcontractors who take part in performance of the carriage"). The bill of lading between Van Ommeren and the shipper/consignee included a clause that extended all exemptions and limitations on liability to agents of the carrier.[4] Accordingly, Van

Ommeren does not dispute that Cooper/T. Smith is entitled to the $500 liability limit per package if COGSA and the corresponding provision in the bill of lading were applied.

## II

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty, Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Id.* at 587, 106 S.Ct. 1348. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine

---

**2.** COGSA itself also limits a carrier's liability. *See* 46 U.S.C.App. § 1304(5) ("Neither the carrier nor the ship shall in any event be or become liable for any loss or damage in connection with the transportation of goods in an amount exceeding $500 per package...."). A shipper, however, can increase the carrier's per package liability if the nature and value of the increase is declared on the bill of lading and if a higher freight rate is paid. *See Travelers Indem. Co. v. The Vessel Sam Houston*, 26 F.3d 895, 896 (9th Cir.1994).

**3.** "The name apparently comes from an English ship, The Himalaya, whose crew a passenger successfully sued because the carriage contract did not have such a limitation clause." *SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297, 1305, n. 8 (3d Cir.1992) (citation omitted).

**4.** *See* Def.'s Ex. 1, ¶ 4 ("Every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity, of whatsoever nature, applicable to the Carrier ... shall be available and shall extend to protect every such agent or servant of the Carrier....").

issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy,* 929 F.2d at 1012.

## III

### A.

The context of the current dispute is best understood following a brief overview of the maritime laws governing international cargo shipments. The 1924 Hague Convention "was the culmination of a multinational effort to establish uniform ocean bills of lading to govern the rights and liabilities of carriers and shippers.... in international trade." *J.C.B. Sales, Ltd. v. Wallenius Lines,* 124 F.3d 132, 134 (2d Cir.1997) (quoting *Herd,* 359 U.S. at 301, 79 S.Ct. 766). The Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 *et seq.,* (COGSA), was enacted in 1936 to codify the "American version of ... the Hague Rules." *Wemhoener,* 5 F.3d at 741. COGSA applies compulsorily to all "carriage of goods by sea to or from ports of the United States." 46 U.S.C.App. § 1300.

Although COGSA is still in force in the United States, subsequent international maritime law developments have introduced great uncertainty into the admiralty landscape. In 1968, the Hague Rules were amended by the Visby Rules, which raised the per package amount of carrier liability. *See* Visby Rules Art. II(a), *reprinted in* Saul Sorkin, *Goods in Transit,* App. M (Vol. 7 1998).[5] The United States has not adopted the Visby Amendments and thus retains the $500 per package limit contained in COGSA. The original Hague Rule preventing a carrier from decreasing its liability, however, was not modified by the later Visby amendments; therefore, a nation's adoption of either the initial Hague Rules or the latter Hague–Visby amendments, does not change the prohibition against a carrier lessening its liability.[6] Consequently, disparate liability ceilings between the original Hague enactment (COGSA) and the subsequent Visby Protocol, neither of which can be lessened by a carrier, lead to inconsistent damage awards. In this milieu, forum selection provisions (and their judicial enforcement, *vel non* ) are often "outcome determinative" in a most profound way.

### B.

 "[T]he underlying [ ] claim[ ] from which the indemnity claim is derived ... [is a] maritime" claim, therefore federal admiralty law governs this action. *Vaughn v. Farrell Lines,* 937 F.2d 953, 956 (4th Cir. 1991). Accordingly, Van Ommeren must satisfy four elements to demonstrate its entitlement to a noncontractual indemnity award.

---

**5.** The Visby amendments provide that "neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the goods in an amount exceeding the equivalent of 10,000 francs per package or unit or 30 francs per kilo of gross weight of the goods lost or damaged, whichever is the higher." These rules were amended by the 1979 Brussels Protocol, which changed the liability amount to no more than "666.67 units of account per package or unit or 2 units of account per kilogramme of gross weight of the goods lost or damaged, whichever is higher." Belgium has ratified both of these protocols and the 1979 Protocol represents the current state of liability limits in Belgium.

**6.** *See* Hague Rules, Art. 3(8) ("Any clause, covenant, or agreement in a contract or carriage relieving the carrier or the ship from liability for loss or damage ... or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.").

*Vaughn,* 937 F.2d at 956.[7] First, Van Ommeren must show that an appropriate indemnitor-indemnitee relationship exists between the two parties. *See id.* Second, Van Ommeren must demonstrate that it was under a certain compulsion to satisfy the underlying claim. *See id.* Third, it must prove that the settlement between the subrogated insurers and itself was reasonable. *See id.* Finally, it must demonstrate a causal relationship between the actions of the indemnitor and the resulting damage. *See id.*

■ Cooper/T. Smith denies that its actions or missions caused the damage to the coils. Nevertheless, the only dispute between the parties relevant to the pending motion centers on whether Van Ommeren's settlement of a claim in excess of $76,000 for $57,000 was reasonable, or whether it was instead, as a matter of law, a gratuitous payment, relieving Cooper/T.Smith of liability for any amount in excess of $7500. "A payment in excess of a party's legal liability would be unreasonable as a matter of law, so as to preclude indemnification for the excess portion." *Prudential Lines, Inc. v. General Tire Intern. Co.,* 440 F.Supp. 556, 561 (S.D.N.Y.1977). *See also Compania Sud Americana De Vapores v. I.T.O. Corp.,* 940 F.Supp. 855, 869 (D.Md.1996) ("the final element ... is proof that the indemnitee's 'settlement with the plaintiff in the underlying action was reasonable.' ") (quoting *Vaughn,* 937 F.2d at 957). The resolution of this question turns, in part, on an assessment of how a Belgian court likely would have adjudicated the underlying primary claim, but also requires examination of the language included in the bill of lading—a contract that binds the shipper, consignee and the carrier, as well.[8]

### C.

Van Ommeren concedes that had it been sued in a United States District Court in New York as mandated by the forum selection clause in the bill of lading, its liability would not have exceeded $7500 by virtue of COGSA and, independently, its incorporation into the other bill of lading provisions quoted above. Cooper/T. Smith argues that because Sheffield's agents did not *explicitly* threaten to sue Van Ommeren in *Belgium,* or in any particular jurisdiction, for that matter, Van Ommeren's decision to settle the claim was not reasonable. This contention is unpersuasive.

Van Ommeren contends, convincingly, that "those negotiating the settlement on behalf of Van Ommeren could reasonably anticipate that if the cargo underwriter carried out its [nonspecific] written threat and filed suit, it would not have done so in the United States, but in Europe." Pl.'s Mem. Opp. Summ J. at 3. In other words, because (1) the shipping company was British, (2) the American consignee's underwriters corresponded with Van Ommeren directly in the Netherlands, (3) the coils were loaded in Belgium, and (4) adherence to the forum selection clause requiring suit in the United States would have foreclosed a judgment in the full amount of the damage, Van Ommeren contends that it reasonably anticipated that suit on the underlying primary claim would be brought in Europe, rather than in the United States. In addition, its claims agent testified by affidavit that "from his experience dealing with cargo claims, [he] was aware that it is now common practice for claims settling and recovery agents such as [Sheffield's] to arrange for suit to be filed in Antwerp or Rotterdam ... even where the bill of lading calls for jurisdiction in the United States and applicability of U.S. law (COGSA)." Pl.'s Ex. 2.

Furthermore, Van Ommeren argues that had it been sued in Belgium, a Belgian court

---

**7.** The Fourth Circuit's holding in *Vaughn* applied to a claim in which the "proposed indemnitor was notified of the underlying claim and tendered the defense, but refused to participate in the settlement." *Vaughn,* 937 F.2d at 956. Similar factors exist here, as Van Ommeren alleges, and Cooper/T. Smith does not deny, that Van Ommeren notified the stevedore of the underlying claim arising from the damaged cargo, that it requested Cooper/T. Smith's participation in settlement negotiations, and that it informed Cooper/T.Smith of its intention to seek indemnification if Cooper/T.Smith did not pay the settlement.

**8.** *See* Def.'s Ex. 1 ("In accepting this Bill of Lading, the shipper, consignee, and owner of the goods agree to be bound by all of its stipulations, exceptions, and conditions.").

would have ignored the bill of lading and COGSA's liability limits, thus exposing Van Ommeren to $76,345 of liability, not $7500. In support of this argument, Van Ommeren offers the testimony of a Belgian attorney, Guy van Doosselaere. Van Doosselaere testified by affidavit that Belgium has ratified the Visby Amendments to the Hague Rules, which provide a larger amount of liability than the original Hague Rules. These rules, like COGSA, do not permit a carrier to lessen the liability provided for by statute. Van Doosselaere concluded that "any Belgian Court would have thrown out the bill of lading clauses referring to U.S. law (Clause 2, i.e., the Paramount clause, and Clause 23, i.e. the law and jurisdiction clause) as well as the limitation of liability clause (Clause 3, $500 per package or per shipping unit) as being contrary to Rule III, § 8 of the Belgian enactment of the Hague Visby Rules." Pl.'s Ex. 1.

Based on the record before me, I accept van Doosselaere's affidavit as an accurate reflection of Belgian law. Cooper/T. Smith has not proffered any evidence of Belgian law to the contrary, although it does not concede the correctness of van Doosselaere's legal opinion. In the complete absence of any evidence rebutting plaintiff's characterization of Belgian law, I will accept van Doosselaere's testimony that a Belgian court would not have respected the choice of law and forum selection clause, or COGSA's $500 per package limit on liability.[9]

▬ Nevertheless, the fact that a Belgian court would have disregarded the choice of law provision and the $500 limit on liability is only a necessary basis, and not a sufficient basis, for the conclusion that Van Ommeren's settlement was reasonable. This is particularly so because the choice of law and forum selection clauses inserted into the bill of lading explicitly binds the *shipper and the consignee* to the adjudication of disputes according to United States law in a United States forum. Accordingly, the dispositive question presented is whether Van Ommeren's failure to seek to enforce its contract and thereby

bind the consignee (and its agents) to the forum selection clause by suing for a declaratory judgment in the United States rendered its settlement unreasonable as a matter of law.

*Farrell Lines, Inc. v. Columbus Cello–Poly Corp.*, 32 F.Supp.2d 118 (S.D.N.Y.1997), *aff'd sub nom. Farrell Lines, Inc. v. Ceres Terminals, Inc.*, 161 F.3d 115 (2d Cir.1998) (per curiam) is directly on point. *Farrell* involved a declaratory judgment action brought by the owner/operator of the vessel against the subrogated cargo insurance companies which had filed suit in Italy against the plaintiff for damage to cargo. The bill of lading contained choice of law and forum selection clauses which mandated the application of United States substantive law and selected the United States District Court for the Southern District of New York as the forum—clauses essentially identical to those at issue in the case at bar. *Farrell* asked the United States court to issue declaratory judgment that its liability could not exceed $500 and also sought to *enjoin* the Italian judicial proceeding which had been instituted against it.

Although the defendants argued, *inter alia*, that the forum selection clause was invalid under Italian law, the court held that United States law determined the validity of the forum selection clause, and it was enforceable. *Farrell*, 32 F.Supp.2d at 127. As to the applicability of COGSA's $500 liability limit, the court stated that:

> [i]rrespective of what law an Italian court would apply, [the court] must apply COGSA. The bill of lading did not incorporate the Hague–Visby Rules, the laws in force in Italy; rather, the owner, shipper, and carrier, pursuant to the Bill of lading agreed that COGSA would govern, and federal choice-of-law rules require that this choice would be enforced.

*Id.* at 129. Accordingly, the court granted the plaintiff's declaratory judgment and enjoined the Italian proceeding. The Second Circuit affirmed the district court. It concluded, specifically, that under the modern view of an

**9.** In determining foreign law, the court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1.

admiralty court's power, injunctive relief was permissible. *Ceres Terminals*, 161 F.3d at 117. It also noted that the case presented circumstances appropriate for the exercise of discretion to issue declaratory relief. *Id. Farrell* demonstrates that Van Ommeren could have sued successfully in federal court in New York, and would have received declaratory and injunctive relief enforcing the provisions in the bill of lading.

Van Ommeren attempts to distinguish its situation from that presented in *Farrell*, but its contentions are unavailing. It first argues that because COGSA applied only as a contract term in *Farrell*, whereas here it applies of its own force, I should not look to *Farrell* for guidance. That COGSA applies *ex proprio vigore* to Cooper/T. Smith's actions is irrelevant to whether Van Ommeren could or should have sought declaratory judgment in a United States federal court. Van Ommeren's repeated claim that a "Belgian court would not have enforced any contrary choice of law or forum provision in the bill of lading" is irrelevant to the ultimate issue of whether it reasonably failed to seek to enforce the terms in the bill of lading that would have limited its own liability and that of its indemnitee.

Second, and in the same vein, Van Ommeren contends that *Farrell* is distinguishable because the record in *Farrell* did not contain sufficient evidence of how an Italian court would treat a forum selection clause, whereas van Doosselaere's testimony that Belgium would have ignored the forum selection clause is unrebutted. Although the *Farrell* court acknowledges the insufficient evidence

of Italian law, it also declares, however, that "United States law should determine the validity of the forum selection clause," and that COGSA's liability limits applied regardless of what an Italian court would do. *Farrell*, 32 F.Supp.2d at 127. Neither of Van Ommeren's arguments remotely demonstrates why *Farrell* does not provide a compelling example of precisely what Van Ommeren reasonably could have done to limit its liability.

Van Ommeren has not proffered any evidence to demonstrate that it chose not to seek declaratory judgment due to an identified risk, burden or expense. In fact, Van Ommeren offers no legal argument to rebut Cooper/T. Smith's contention that it *could and should* have sued in the United States to enforce the bill of lading. Van Ommeren made a conscious choice to allow Sheffield and its agents to escape the terms of its agreement. To do so was its choice, albeit one that bars indemnification for the gratuitous payment.[10]

COGSA was enacted to promote uniformity and certainty in international shipping. *Wemhoener*, 5 F.3d at 741. Permitting a carrier to choose not to enforce COGSA, and its own bill of lading, exacerbates, rather than lessens, the inherent unpredictability in the international maritime industry. *Cf. Nippon Fire & Marine Ins. Co. v. M/V Tourcoing*, 979 F.Supp. 206, 210–11 (S.D.N.Y.1997), *aff'd* 167 F.3d 99 (2d Cir. 1999) ("Nippon contends that the shipper could not have been certain, at the time the bill of lading was issued, where suit would be brought and which rules would apply. Such

---

10. *Compania Sud Americana De Vapores v. I.T.O. Corp.*, 940 F.Supp. 855 (D.Md.1996), cited by Van Ommeren, does not compel a contrary result. In *I.T.O. Corp.*, the defendant stevedore argued that it was not required to indemnify the plaintiff for the underlying cargo damage claim because plaintiff settled the claim after the United States one year statute of limitations had expired. *I.T.O. Corp.*, 940 F.Supp. at 860. The plaintiff had been threatened with litigation in Chile, which had a two year statute of limitations that had not yet passed. *See id.* The court held that the plaintiff's payment to the cargo underwriters was reasonable, in part because a Chilean court would have ignored the COGSA one year statute of limitations. *See id.* at 862. When confronted with defendant's argument that the settlement was not reasonable because the plain-

tiff could have sued in the United States for a declaratory judgment to enforce the bill of lading and COGSA, the court stated that "under the circumstances, [plaintiff] was obliged neither to wait until it was sued in Chile nor to pursue a risky and expensive litigation strategy in the United States." *Id.* at 870.

While there are several factual differences between *I.T.O. Corp.* and this case, the absence in the bill of lading in *I.T.O. Corp.* of a forum selection clause is precisely what would have made litigation in the United States "risky." Van Ommeren faced no such risk; indeed, it concedes that the bill of lading would have been enforced. *See Farrell*, 32 F.Supp.2d at 127 (discussing enforceability in admiralty of forum selection clauses).

uncertainty, however, is inherent to international shipping, and it in fact explains the longstanding efforts ... to create greater uniformity in liability limits and other rules relating to bills of lading."). In an instance such as this one, where COGSA and the Hague–Visby Rules are compulsorily applicable in their respective states of enactment (United States and Belgium), contractual choice of law and forum selection provisions constitute the only rational way to identify the parties' intentions and designate the appropriate forum and law to adjudicate the rights and liabilities of the parties. Therefore, in the absence of any showing that institution of a preemptive suit for declaratory and injunctive relief would have been burdensome, it was unreasonable for Van Ommeren to ignore its own contract and then seek to foist the financial consequences onto Cooper/T. Smith. Accordingly, as a matter of law, Van Ommeren's settlement of the underlying claim was unreasonable.

### IV

For the reasons stated above, partial summary judgment shall be entered in favor of the defendant limiting its potential liability to $7500. An order follows.