**MACSTEEL INTERNATIONAL USA CORP., Plaintiff,**

v.

**M/V IBN ABDOUN, her engines, boilers, tackle, etc., United Arab Shipping Company (S.A.G.), Cargill Marine & Terminal Inc. (Cargo Carriers), Celtic Marine Corp., Defendants.**

**No. 99 CIV. 4562(CBM).**

United States District Court,
S.D. New York.

Aug. 3, 2001.

Harold M. Kingsley, Kingsley & Kingsley, Hicksville, NY, for Plaintiff.

Robert A. Milana, London Fischer LLP, New York, NY, for Defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, a shipper, shipped steel products from Durban, South Africa to ports in San Juan, Tampa, New Orleans and Houston on a vessel called the IBN Abdoun (the "Abdoun"). On June 24, 1999, plaintiff filed this suit pursuant to this court's admiralty jurisdiction, claiming that the cargo was damaged en route by exposure to water, resulting in damages in excess of $1 million.

Plaintiff filed this suit against defendant United Arab Shipping Co. ("United Arab"), the carrier responsible for transporting the steel goods from South Africa to U.S. ports, for sweat contamination, physical damage caused during the voyage

and rust damage caused by seawater.[1] In addition, plaintiff is suing Cargill Marine and Terminal Inc. ("Cargill"), the carrier hired to transport the goods from New Orleans to Chicago, for rust damage caused by freshwater.[2] On January 1, 2001, plaintiff filed a motion to strike United Arab's defense of a $500 per package liability limitation imposed by the Carriage of Goods by Sea Act ("COGSA") and for summary judgment as to United Arab's liability. On January 17, 2001, defendant United Arab responded with a cross-motion for summary judgment as to COGSA's liability limitation and opposition to plaintiff's motion for summary judgment. This court heard argument on the summary judgment motions on June 14, 2001.[3]

As set forth below, United Arab has not presented *prima facie* evidence that plaintiff had a fair opportunity to opt out of COGSA's $500 per package liability limitation. In addition, United Arab has not contested its liability for a portion of the damage to the steel shipment. Therefore, plaintiff's motion to strike the affirmative defense of limitation of liability and for summary judgment on liability is granted.

## I. Background

The underlying facts pertinent to the summary judgment motions are, for the most part, undisputed. In June, 1998, plaintiff's shipment of steel products was loaded aboard the Abdoun in Durban, South Africa. During the voyage to ports in San Juan, Tampa, New Orleans and Houston, the steel was exposed to seawater as a result of leaky hatches aboard the Abdoun. As a result of the exposure to seawater, the steel suffered rust damage. Defendant United Arab does not contest, for the purposes of this action, that the Abdoun was unseaworthy. United Arab also admits that the unseaworthiness of the Abdoun was responsible for at least part of the damage to the steel products.

The parties have presented two contracts regarding limitation of liability for damage to the shipment. The first contract, the bill of lading regarding the shipment (the "Bill of Lading"), bore no explicit reference to any liability limitation but contained only the following clause regarding liability:

(2) General Paramount Clause

The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of said Convention shall apply.

*Trades where Hague–Visby Rules apply.*[4]

---

1. The claims regarding damage to the portion of the shipment destined for San Juan were settled in a separate lawsuit; the instant case relates only to the remainder of the shipment, discharged in Tampa, New Orleans and Houston.

2. On January 18, 2001, this case was dismissed as to a third named defendant, Celtic Marine.

3. The pending motions address defendant Cargill's liability only peripherally. Cargill has not filed a motion for summary judgment.

Issues regarding Cargill's liability will be decided at trial.

4. The term "Hague–Visby Rules" refers to the Hague Rules as adopted by those countries which also adopted a 1968 amending protocol (the "Visby Amendment") and a 1979 amending protocol (the "SDR protocol"). These two protocols impose standard per package or per kilogram 1 mitations based on "special drawing rights" ("SDR"'s). *See Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 101–02 (2d Cir.1999). An SDR is a fluctuating artificial currency developed to deal

In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968—The Hague–Visby Rules—apply compulsorily, the provisions of the respective legislation shall apply.

The country of shipment, South Africa, has enacted the Hague Rules setting a limitation on collectable damages of two SDRs per kilo. United Arab does not dispute that if the standard of two SDRs per kilo applies, the limitation would be approximately $2.66 per kilo, higher than the actual damage claimed in this case. Therefore, if the Hague Rules as adopted by South Africa apply to the shipment at issue, the limitation on damages would be moot.

The second contract at issue is a charter party which has been proffered by United Arab (the "Charter Party").[5] The Bill of Lading states on its face "TO BE USED WITH CHARTER–PARTIES / CODE NAME: COGENBILL." United Arab claims the proffered Charter Party is a standard form referred to as a Cogenbill. United Arab claims that the Charter Party, read in conjunction with the Bill of Lading, reflects the totality of its contract of carriage with plaintiff.

The Charter Party, presented to this court as defendant's Exhibit D, consists of a 15–page document including a facsimile cover page. The second page is a cover page to the contract setting forth the parties to the contract and providing, *inter alia*, a space for their signatures. The terms of carriage are set forth on pages 3 through 15 of the Charter Party. Pages 3 through 5 of the Charter Party appear to be boilerplate language. No reference is made in this boilerplate to a choice of rules governing the shipment. Each of the pages thereafter bears the heading "RIDER CLAUSES TO M.V. 'IBN ABDOUN' CHARTER PARTY DATED 2 JUNE 1998," (the "Rider Clauses"). The Rider Clauses begin with numbered paragraph 18. The numbered paragraphs end on page 12. A series of unnumbered paragraphs continue from pages 13 to 15.

The Rider Clauses contain two "Clauses Paramount" purporting to incorporate a choice of rules governing the transaction. Paragraph 35 on page 9 of the Charter Party states in part:

35. *VOYAGE CHARTER PARTY CLAUSE PARAMOUNT* (Carriers [sic] Rights and Immunities)

... It is expressly agreed that the Owners shall have the benefit of the "Rights and Immunities" in favour of the carrier or ship and shall assume the "Responsibilities and Liabilities" contained in the enactment of the country of shipment giving effect to the rules set in the International convention for the unification of certain rules relating to the Bills of Lading dated Brussels the 25th August 1924 (The Hague Rules).... If any provision of the Charter Party shall be repugnant to the said rules to any extent, such provision shall be void to the [sic] extent, but no further. Any Bills of Lading issued pursuant to this Charter

---

with international trade. *See J.C.B. Sales Ltd. v. Wallenius Lines*, 124 F.3d 132, 134 (2d Cir.1997). Plaintiff has presented the report of an expert stating that South Africa's enactment of the Hague Rules includes adoption of the Visby Amendment. United Arab has not contested plaintiff's claim that South Africa has enacted the Hague–Visby Rules.

**5.** A charter party is a document which sets out the arrangements and contractual agreements entered into when one party, the charterer, takes over the use of an entire ship belonging to another party, the owner of the ship. *See* G. Gilmore & C. Black, Jr., *The Law of Admiralty,* § 4.1 (2d ed.1975).

Party shall contain a Clause Paramount incorporating the Hague rules whether they are compulsorily applicable or not. In addition, in an unnumbered paragraph on page 13, the Rider Clauses contain a clause which states:

### USA CLAUSE PARAMOUNT

This Bill of Lading shall have effect to the provisions of the Carriage of Goods [by Sea] Act of the United States, approved April 16th 1936, which shall be deemed to be incorporated herein and nothing herein, contained shall be deemed a surrender by the carrier of any of it's [sic] rights or immunities or an increase of any of it's [sic] responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

The Carriage of Goods by Sea Act applies a $500 per package limitation on damages incurred during shipping.[6]

Plaintiff contests the authenticity of the Charter Party proffered by United Arab. The Charter Party was not signed by plaintiff. The space provided on page 2 of the Charter Party for the signature of the "charterer" is left blank. United Arab responds that the Charter Party was provided to United Arab by plaintiff in a related case regarding the portion of this shipment discharged in San Juan. In the course of discovery of that case, United Arab claims, plaintiff's representative, Bill Matteo, sent a copy of the Charter Party representing that it was the charter party governing the shipment at issue here.

## II. Discussion

Plaintiff moves to strike United Arab's defense of a $500 per package liability limitation imposed by COGSA and for summary judgment as to United Arab's liability. United Arab has made a cross-motion for summary judgment enforcing COGSA's liability limitation.

The standard for summary judgment is that "[u]ncertainty as to the true state of any material fact defeats the motion." *Gibson v. Am. Broad. Companies*, 892 F.2d 1128, 1132 (2d Cir.1989). The movant must demonstrate the absence of a genuine issue of material fact. If the movant carries this burden, the burden then shifts to the non-moving party to produce concrete evidence sufficient to establish a genuine unresolved issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). The court then must view the facts in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences from the evidence that can be drawn in that party's favor. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000). The court neither weighs evidence nor resolves material factual issues

6. COGSA is the United States' enactment of the Hague Rules. Section 1304(5) of COGSA provides in relevant part:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. . . .

By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, that such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

46 U.S.C.App. § 1304(5).

but only determines whether, after adequate discovery, any such issues remain unresolved because a reasonable factfinder could decide for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson*, 892 F.2d at 1132. However, neither conclusory statements, conjecture, nor speculation suffice to defeat summary judgment. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996).

Defendant United Arab contests neither that the Abdoun was unseaworthy nor that the unseaworthiness of the Abdoun was responsible for at least part of the damage to the steel products. Therefore, there is no genuine issue of material fact as to United Arab's liability for the damage. However, United Arab claims that some of the damage to the steel was caused by freshwater and, therefore, did not occur on board the Abdoun. United Arab further argues that plaintiff's estimates of the damage are exaggerated. For the preceding reasons, this court grants summary judgment to plaintiff as to United Arab's liability but the issue of damages is reserved for trial.

The remainder of plaintiff's and United Arab's motions for summary judgment as to COGSA's liability limitation focus on the terms of the two contracts governing the shipment of the steel goods. United Arab argues that COGSA applies and United Arab is liable for only $500 per package. Plaintiff argues that the Hague–Visby Rules apply and the limitation is moot. As discussed below, United Arab has not established that COGSA's $500 per package liability limitation applies to this shipment.

### A. COGSA and the Fair Opportunity Doctrine

■ United Arab claims that: (1) the Charter Party was incorporated into the Bill of Lading; and (2) the USA Clause Paramount incorporating COGSA invalidates any reference to the Hague or Hague–Visby Rules. Therefore, United Arab claims that COGSA's $500 limitation applies to this transaction. Plaintiff first responds that the Bill of Lading citing the Hague and Hague–Visby Rules is the governing document and the Charter Party was not incorporated into the Bill of Lading. Second, plaintiff argues that even if the Charter Party was incorporated, the references to the Hague and/or Hague–Visby Rules in the Bill of Lading and Charter Party indicate the intent of the parties to contract out of COGSA and adopt a higher liability limitation.[7] Third, plaintiff claims that, according to South African law, the Hague–Visby Rules apply compulsorily to this transaction and, therefore, the Hague–Visby Rules as referenced in the Bill of Lading govern liability. Finally, plaintiff argues that even if COGSA, as incorporated by the Charter Party, governs this transaction, the Charter Party did not give plaintiff a fair opportunity to opt out of COGSA's $500 per package limitation. Therefore plaintiff claims that under the fair opportunity doctrine, the limit does not apply to this transaction.

■ Based only on the fair opportunity doctrine, even if United Arab could establish that the Charter Party incorporating COGSA governed this transaction, COG-

---

**7.** Although COGSA applies an automatic $500 per package limit on damages to goods shipped to the United States, parties are free to contract out of this limitation. Parties may contract for a higher limit but they may not contract for a lower limit. The Second Circuit has held that, where COGSA applies *ex* *proprio*, adoption in a contract of the Hague or Hague–Visby Rules as enacted in the country of shipment indicates the intent of the parties to contract out of COGSA's $500 per package limit. *See J.C.B. Sales*, 124 F.3d at 136–37.

SA's liability limitation would not apply. Therefore, this court need not address which document governs liability, whether the parties contracted out of COGSA's limitations or whether the Hague–Visby Rules apply compulsorily in order to grant plaintiff's motion for summary judgment striking COGSA's liability limitation.

■ COGSA provides that a carrier's liability is limited to $500 per package unless a higher value is declared by the shipper and inserted in the Bill of Lading or the parties agree to a higher limit. *See* 46 U.S.C.App. § 1304(5). However, by operation of the fair opportunity doctrine, for a carrier to enforce COGSA's $500 per package liability limitation, a shipper must have: (1) notice of COGSA's liability limitation and (2) fair opportunity to declare a higher value for the cargo. *See Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 101 (2d Cir.1999). In general, therefore, a carrier seeking to enforce the $500 per package limitation must establish *prima facie* that notice of the limitation was given to the shipper and thus that the shipper was given an opportunity to opt out of the limitation. *See General Electric Co. v. M.V. Nedlloyd*, 817 F.2d 1022, 1024 (2d Cir.1987). This *prima facie* showing is made only through language contained in the bill of lading. *See id.* at 1029. If the carrier succeeds in establishing its *prima facie* case, the burden shifts to the shipper to demonstrate that a fair opportunity did not exist. *See id.* Only after the carrier has established a *prima facie* case of fair opportunity may the court examine other evidence that notice and fair opportunity

existed, for example, the procurement of additional insurance by the shipper or the experience of the shipper. *See Nippon Fire*, 167 F.3d at 102; *St. Paul Fire & Marine Ins. Co., v. Thypin Steel Co., Inc., 1999 WL 639718 at *8 (S.D.N.Y.1999).*[8]

■ The Second Circuit has held that a carrier may prove a *prima facie* case of fair opportunity by showing that the bills of lading: (1) explicitly incorporate COGSA and (2) contain a space for the shipper to declare a higher value for the shipment or make explicit mention of the $500 per package liability limitation. *See Nippon Fire*, 167 F.3d at 101; *General Elec.*, 817 F.2d at 1029; *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam*, 759 F.2d 1006, 1017 n. 12 (2d Cir.1985); *Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*, 1990 WL 199081 at * 2 (S.D.N.Y. 1990), *aff'd*, 962 F.2d 276 (2d Cir.1992).

In this case, assuming *arguendo* that the Charter Party is incorporated into the Bill of Lading, the first element, explicit incorporation of COGSA, is satisfied. However, no space was provided for plaintiff to declare a higher value for its shipment and there was no specific mention made of any limitation of liability.

The Second Circuit has not addressed the question of whether a mere reference to COGSA, without more, is sufficient to impose COGSA's $500 per package liability limitation on the shipper. However, in the absence of specific direction from the Second Circuit, subsequent cases from the Southern and Eastern Districts of New York have further reduced the burden of a

---

8. United Arab notes that the First, Ninth and Eleventh Circuits have held that an analysis focused on opportunity to declare a higher value is faulty because in reality, experienced shippers are aware of liability limitations and purchase cargo insurance. However, the fair opportunity doctrine is followed by the Second Circuit. In the Second Circuit, a defen-

dant may present evidence that plaintiff had cargo insurance and thus was aware of COGSA's liability limitation, only after defendant has established a *prima facie* showing of fair opportunity. *See Nippon Fire*, 167 F.3d at 102; *St. Paul*, 1999 WL 639718 at *8. United Arab cites no Second Circuit law which suggests otherwise.

carrier in proving its *prima facie* defense. These cases have allowed carriers to establish *prima facie* evidence of fair opportunity by showing that the bills of lading: (1) explicitly mention COGSA's $500 per package limitation, (2) specifically state that the shipper will have to declare excess liability in order to avoid the limitation and/or (3) specifically incorporate COGSA by name in the bill of lading. These cases suggest that, as a bare minimum, clear and unambiguous incorporation of COGSA by name in the bill of lading is sufficient to establish that the shipper had fair opportunity. *See Ins. Co. of N.Am. v. M/V Xiang He,* 1990 WL 121587 at *4 (S.D.N.Y.1990) (finding that bill of lading satisfied fair opportunity test where it explicitly incorporated COGSA and specifically stated that shipper would have to declare excess value in order to avoid COGSA's liability limitations); *E.M.S. Industrie S.A. v. Polskie,* 608 F.Supp. 1133, 1135 (E.D.N.Y.1985) (upholding liability limitation where bill of lading incorporated COGSA by name); *cf. St. Paul,* 1999 WL 639718 at *6 (holding no fair opportunity where charter party referenced English law and bills of lading indirectly referenced COGSA); *Royal Ins. Co. v. M.V. ACX RUBY,* 1998 WL 524899 at *3–4 (S.D.N.Y.1998) (holding no fair opportunity where COGSA applied *ex proprio* but no explicit mention was made of COGSA or its liability limitation); *Cross Machinery Group v. M/V "Alligator Independence",* 1992 WL 47557 at *4 (S.D.N.Y. 1992) (striking the carrier's liability limitation defense because the bills of lading made no mention of COGSA and had no space for the declaration of excess value).

▮ United Arab argues that the above-cited district cases establish that the mere reference to COGSA in the Charter Party establishes *prima facie* evidence of fair opportunity in this case. However, when the bill of lading requires the shipper to follow a "circuitous" route in order to discover what set of rules establishes the liability limitation on a shipment, the carrier fails to establish a *prima face* case of fair opportunity. *See Royal Ins. v. M/V ACX Ruby,* 1998 WL 524899 at * 4 (S.D.N.Y.1998) (holding no fair opportunity where "a shipper who wanted to learn about his rights under the ... Bill of Lading would have to investigate which set of rules, if either, had been adopted in the country of shipment and then determine how to avoid whatever liability limitations those rules imposed."); *St. Paul,* 1999 WL 639718 at *7 ("[O]ne cannot 'glean' anything meaningful from a contingent reference to rules in one of two countries, with no clue presented as to how one can determine which country's rules apply, let alone what those rules are."). Finally, this court notes the principle that ambiguity as a consequence of poor drafting of a bill of lading will be construed against the drafter (in this case, United Arab). *See Transatlantic Marine Claims Agency, Inc., v. M/V "OOCL Inspiration",* 137 F.3d 94, 104 (2d Cir.1998); *Navieros Oceanikos, S.A. v. S.T. Mobil Trader,* 554 F.2d 43, 47 (2d Cir.1977).

In this case, it is not clear from the face of the contract of carriage that COGSA's liability limitation applies. United Arab does not dispute that neither the Charter Party nor the Bill of Lading provided a space for plaintiff to declare a higher value for the cargo. In addition, neither document specifically referred to COGSA's $500 per package limitation or the requirement that plaintiff declare a higher value for the goods in order to opt out of the limitation. COGSA was not mentioned in the Bill of Lading itself. Rather, this contract of carriage incorporated a total of three "Clauses Paramount" purporting to govern liability, all with differing provisions. The Bill of Lading incorporated the Hague Rules as adopted by the country of

shipment, in this case, South Africa. The Bill of Lading also notes that if the Hague–Visby Rules apply compulsorily, then that legislation, rather than the Hague Rules or COGSA, will be deemed incorporated in the Bill of Lading. Finally, the Charter Party itself, in what appear to be either conflicting paragraphs or an attempt to contract out of COGSA's liability limitation, incorporated both the Hague Rules as adopted by the country of shipment and COGSA.

Because it is not clear from the face of the Bill of Lading and the Charter Party, examined in conjunction, that COGSA governs this shipment, this court finds that plaintiff did not have a fair opportunity to opt out of COGSA's liability limitation.

## III. Conclusion

For the reasons set forth above, plaintiff's motion to strike the affirmative defense of limitation of liability and for summary judgment on liability is hereby GRANTED. For the same reasons, defendant United Arab's cross-motion for summary judgment is DENIED. The issues of defendant Cargill's liability and the amount of damages for which each defendant is responsible will be determined at trial.

**SO ORDERED.**